IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CONCILLIO DE SALUD INTEGRAL DE LOIZA, INC., ET AL. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.07-01034 (RMC) |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## **DEFENDANT'S MOTION TO DISMISS AND TO STRIKE ALL CLASS CLAIMS**

Defendant, Michael O. Leavitt, Secretary of Health and Human Services, respectfully moves the Court, pursuant to Rules 12(b)(1), 12(b)(6), and 23 of the Federal Rules of Civil Procedure, to dismiss this action for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief can be granted, and to strike all class claims. In support of this motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities. A proposed order is also attached.

Respectfully submitted,


  /s/
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

/s/
MEGAN L. ROSE, N.C. Bar # 28639
Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-514-7220


TRACEY GLOVER
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare and Medicaid Services
330 Independence Ave., S.W., Room 5309
Washington, D.C. 20201

OF COUNSEL:

DANIEL MERON
General Counsel

JANICE L. HOFFMAN
Acting Associate General Counsel

MARK D. POLSTON
Deputy Associate General
Counsel for Litigation

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONCILLIO DE SALUD INTEGRAL DE LOIZA, INC., ET AL. | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No.07-01034 (RMC) |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND TO STRIKE ALL CLASS CLAIMS

### I. INTRODUCTION

Plaintiffs Concillio de Salud Integral de Loiza, Inc. ("Loiza") and Junta del Centro de Salud Comunal Dr. José S. Belaval, Inc. ("Belaval") are nonprofit Commonwealth of Puerto Rico corporations designated under the Medicaid statute as Federally-qualified health centers ("FQHCs"). The individual Plaintiffs named in the complaint are all members of the Board of Directors and patients of one of the two FQHC Plaintiffs. Pls.' Compl.,¶15. (FQHC and individual Plaintiffs are referred to collectively as "Plaintiffs"). The Defendant in this matter is Michael O. Leavitt, the Secretary of the United States Department of Health and Human Services ("the Secretary").

Plaintiffs complain that the Secretary has erred in failing to take enforcement actions against the Commonwealth of Puerto Rico for its purported failure to make supplemental "wraparound" payments to FQHCs as contemplated by federal law and regulation. The instant

action is a mirror image of a case recently litigated by these two FQHCs in the United States District Court for the District of Puerto Rico. As a result of that litigation, it appears that the Commonwealth has made the required wraparound payments to these Plaintiffs. Nonetheless, Plaintiffs ask this Court to order the Secretary to cease federal financial participation in the Medicaid program operated by the Commonwealth and to declare invalid all subcontracts between FQHCs and the HMOs used by Puert Rico for the delivery of health services under its program. As such, Plaintiffs effectively ask this Court to order the Secretary to withhold millions of dollars from the Puerto Rico Medicaid program and tear down the entire payment structure currently in place by invalidating the contracts between the FQHCs and the HMOs under which all Medicaid services are delivered in Puerto Rico.

For all of the reasons set forth in more detail below, the Court lacks subject matter jurisdiction to grant Plaintiffs' request, and accordingly, this case should be dismissed. First, it is axiomatic that suit against the United States will not lie unless a specific waiver of sovereign immunity has been articulated by Congress. In this case, no such waiver of sovereign immunity exists. Plaintiffs' complaint cites no statute waiving the government's immunity from this suit. Second, Plaintiffs have no standing to bring this action. Plaintiffs have endured no injury in fact, as they have now received payment from the Commonwealth. Furthermore, to the extent some injury may have occurred, it is not fairly traceable to agency action, and the relief sought would not likely redress the injury alleged. Accordingly, Plaintiffs do not have standing to bring this action. Third, longstanding case law demonstrates that the decision whether to take an enforcement action against the Commonwealth, which is the relief sought by Plaintiffs herein, is committed to agency discretion by law and is unreviewable by the Courts.

Plaintiffs also assert class allegations concerning a class comprised of all named Plaintiffs in addition to "beneficiaries of Puerto Rico's Medicaid program or other individuals not enrolled in Medicaid who are patients of, or wish to be patients of FQHCs," Pls.' Comp., ¶18.  However, Plaintiffs' class claims cannot satisfy the requirements of Fed. R. Civ. P. 23.  As defined, the proposed class is staggeringly large, including all Medicaid patients in Puerto Rico in addition to potentially all individuals throughout the United States who are or "wish" to be patients of FQHCs.  The proposed class bears little or no relation to Plaintiffs, who are FQHCs and members of one of the two FQHC Plaintiffs' Board of Directors.  *Id.* at ¶¶ 12-17.

Furthermore, because the FQHC Plaintiffs have already been paid by the Commonwealth, they lack standing to bring this suit and accordingly are not qualified  to represent the proposed class.  Because Plaintiffs have already received wraparound payments from the state, they are not in the same position as potential class members may be – class members who may receive treatment or wish to receive treatment at one of the other FQHCs that, according to Plaintiffs' complaint, may not as yet have received wraparound payment from the Commonwealth.  *See* Pls.' Compl. at ¶ 59.  Any potential class members who are patients of these other FQHCs that have not been paid would have significantly different claims and legal arguments than those of Plaintiffs.

For all of these reasons, the Court should strike all class claims and dismiss Plaintiffs' Complaint.

## II. STATUTORY BACKGROUND

**A.**    **Statutory and Regulatory Background**

      **1.**    **The Medicaid Statute**

The Medicaid Statute, under Title XIX of the Social Security Act, is a federal-state cooperative cost-sharing program that provides medical assistance to families and individuals with insufficient income and resources. 42 U.S.C. § 1396 *et seq.* While a state's participation in Medicaid is not mandatory, once a state does decide to participate, it must comply with all applicable federal statutory and regulatory requirements. *See* 42 U.S.C. § 1396a; 42 C.F.R. Part 430 *et seq.* The Commonwealth of Puerto Rico is considered a State for purposes of the Medicaid Act, unless otherwise indicated. 42 U.S.C. § 1301(a)(1).

A participating State administers its Medicaid program pursuant to a "State plan" that must be approved by the Secretary. 42 U.S.C. § 1396a. The Secretary performs this function through the Centers for Medicare and Medicaid Services ("CMS").

Upon approval of its State plan, a State or territory becomes entitled to reimbursement by the federal government for a portion of its payments to hospitals and other providers of medical assistance to Medicaid recipients. 42 U.S.C. § 1396b(a). This federal contribution to a State's Medicaid expenses is termed federal financial participation ("FFP"). 42 U.S.C. §§ 1396a; 1396b; 42 C.F.R. Part 430. Puerto Rico and other territories are distinct from the states participating in the Medicaid program in that the amounts of federal financial participation payable to each territory in any given fiscal year is capped at a specified amount. *See* 42 U.S.C. § 1308(c).

Medicaid programs are administered by the States and territories, not the federal

government.  For example, within the bounds of federal statutory and regulatory requirements, the States or territories enter into agreements with providers of services and establish the level of reimbursement paid to providers.  See 42 U.S.C. §§ 1396a(a)(13)(A), 1396a(a)(27).  In addition, states have the alternative of contracting with managed care organizations (e.g. HMOs) to provide some or all of the covered services in exchange for payment under a prepaid capitation rate or some other risk-based arrangement.  42 U.S.C. § 1396b(m).

Under this arrangement, the managed care organizations receive predetermined periodic payments in return for providing the required services.  42 U.S.C. § 1396b(m)(2)(A)(iii); *see also* 42 C.F.R. Part 438.  The managed care organization can also contract with various health care providers to actually provide services to Medicaid patients in exchange for a contractually agreed upon payment rate.  *Id.*  The Medicaid Act requires that managed care organizations have an internal grievance procedure under which an enrollee who is eligible for medical assistance under the State plan, or a provider on behalf of such an enrollee, may challenge the denial of coverage of or payment for such assistance.  42 U.S.C. § 1396u-2(b)(4); 42 C.F.R. Part 438 Subpart F.

The federal government has limited oversight over a State or territory's administration of its Medicaid program.  If the Secretary finds that a State is not in compliance with its plan, the Secretary may take certain steps such as withholding further payments to the State.  42 U.S.C. § 1396c.

However, the Secretary has discretion to impose sanctions and before taking any compliance action, the Medicaid Act requires the Secretary to provide the State with "reasonable notice and opportunity for hearing."  *Id.; see also* 42 C.F.R. § 430.35 (CMS withholds payments to the State, in whole or in part, only if, after giving the agency reasonable notice and opportunity

-5-

for a hearing in accordance with subpart D, the Administrator finds that the plan no longer

complies with the provisions of 42 U.S.C. § 1396a; or that in the administration of the plan, there

is failure to comply substantially with any of those provisions); *see also* 42 C.F.R. Part 430

Subpart D (Hearings on Conformity of State Medicaid Plans and Practice to Federal

Requirements).

### 2.    Medicaid and Federally Qualified Health Centers

State Medicaid programs must offer "federally qualified health center and other

ambulatory services" to the categorically needy and may offer those services to the medically

needy.  42 U.S. C. § 1396a(a)(10)(A), 1396d(a)(2)(c)).  Each state plan must include, among its

numerous details, a provision for payments to FQHCs.  42 U.S.C. § 1396a(bb).  A FQHC is a

not-for-profit entity that provides primary and other health care services to "medically

underserved" populations and meets certain other statutory requirements.  42 U.S.C. § 1396d(1).

Entities that receive section 330 Public Health Service ("PHS") grants under 42 U.S.C. § 254b,

or are found by the Secretary to meet the requirements for such funding, are considered FQHCs.

FQHCs must seek reimbursement for providing services to Medicare and Medicaid beneficiaries

as well as third party insurance payments for those patients who are so covered.  42 U.S.C.

§ § 1395k(a)(2)(D)(ii). 1396d(a)(2)(c)), 254b(k)(3)(F).[1]  These funding streams allow FQHCs to

allocate section 330 grant dollars to treating those who lack Medicare, Medicaid or private

insurance coverage.  *See* H.R. Rep. No. 101-247, at 392-93 (1989), *as reprinted in* 1989

---

[1]Provided they meet certain conditions, health centers are eligible to receive certain grants under the Public Health Service Act, 42 U.S.C. 254b. Such centers must meet various requirements: most importantly, they must be located in a medically underserved area or serve a medically underserved population. 42 U.S.C. 254b(a)(1). They must also provide services to Medicaid recipients. See 42 U.S.C. 254b(k)(3)(E). All entities that receive, or qualify to receive, such grants are considered FQHCs.

U.S.C.A.N. 1906, 2118-19.

In 2000, Congress amended the Medicaid Act to replace cost-based reimbursement for

FQHCs with a prospective payment system ("PPS") with payment calculated on a per-visit basis.

Medicare, Medicaid and SCHIP Benefits Improvement Act of 2000, Pub. L. N. 106-554 (Dec.

21, 2000), codified at 42 U.S.C. § 1396a(bb).  Section 1396a(bb)(5) provides that

> in the case of services furnished by a Federally-qualified health center of rural health
> clinic pursuant to a contract between the center or clinic and a managed care entity . . . the State
> plan shall provide for payment to the center or clinic by the State of a supplemental payment
> equal to the amount (if any) by which the amount determined under paragraphs (2), (3), and (4)
> of this subsection exceeds the amount of the payments provided under the contract.

*Id.*  This supplemental payment by the State to the FQHC is known as a "wraparound payment."

### 3.    *Reforma*: The Commonwealth's Managed Care Medicaid Program

As noted above, states may arrange for delivery of Medicaid benefits by contracting with

managed care organizations including health maintenance organizations ("HMOs").  42 U.S.C.

§ 1396b(m).  In 1994, the Commonwealth instituted a managed care approach to the delivery of

Medicaid funded services known as *Reforma*. The Commonwealth contracts with private HMOs

to arrange for the delivery of health care services to Medicaid recipients and pays to each HMO a

fixed monthly sum per Medicaid patient assigned to that HMO.  In return, the HMO agrees to

provide all covered services to the individual.  *Rio Grande Comm. Health Ctr. v. Rullan*, 397 F.

3d 56, 62 (1st Cir. 2005).  The HMO earns a profit if its costs are less than the fixed monthly

sum; it suffers a loss if its costs are more.  *Id.*  In turn, the HMOs subcontract with providers,

including FQHCs, to directly provide care.  *Id.*

4.     **CMS Review of Agreement Between Commonwealth and HMOs**

Plaintiffs suggest that CMS has failed to appropriately oversee the FQHC program operated in Puerto Rico by failing to adequately review the subcontracts between the FQHCs and the HMOs. Pls.' Compl., ¶ 45.  Therefore it asks the Court to order HHS to stop making payments to the Commonwealth until the HMOs' contracts are in full compliance with statutory and regulatory provisions.  *Id.* at ¶ 64.  Central to their claims is the belief that these subcontracts violate requirements governing physician incentive plans ("PIPs").  Plaintiffs misapprehend the law.

As an initial matter, CMS reviews contracts between the states and HMOs.  It does not review the subcontracts between the HMOs and their subcontractors, such as FQHCs.  42 C.F.R. § 438.6(a).  Contracts between the state and the HMOs must contain assurances and certifications that they are complying with the PIP requirements.  *Id.*  However, the regulations expressly state that the PIP requirements apply only to physicians or "physician groups."  42 C.F.R. § 422.208.  The regulations do not define physician groups to include FQHCs, and none of the PIP requirements apply to the subcontracts between the HMOs and the FQHCs.  Accordingly, CMS does not interpret its PIP regulations to apply to FQHCs.  *Id.* at § 422.208(a).

### III. SUMMARY OF FACTS

On June 6, 2003, Plaintiffs filed suit against the Commonwealth of Puerto Rico in the United States District Court for the District of Puerto Rico alleging that the Commonwealth had illegally failed to establish a Prospective Payment System office and to make required wraparound payments.  Plaintiffs also sought to include the United States Department of Health and Human Services as an Interpleader Defendant.  *See Rio Grande Community Health Center*

*Inc., et al. v. Commonwealth of Puerto Rico, et al.; Department of Health and Human Services, et al.,* 397 F.3d 56 (D. P.R. 2006).

In that suit, Plaintiffs alleged that since 2001, the Commonwealth of Puerto Rico's Medicaid program had not made supplemental payments on a quarterly basis to the FQHCs as required by the Medicaid Statute. *See* 42 U.S.C. § 1396a(bb)(1),(2),(3) and (5). Plaintiffs also attempted to interplead the Secretary of the Department of Health and Human Services purportedly to protect section 330 grant funds from alleged claims by both the Commonwealth as well as the HMOs that have contracts with the Commonwealth to provide and deliver health care to Medicaid patients and that in turn contract and pay the FQHCs for such Medicaid services.

Plaintiffs claimed that as a result of not receiving wraparound payments from the Commonwealth, they were unable to pay the HMOs the amounts due them under their contracts except by using their section 330 grant money. However, plaintiffs alleged that this money was not available to pay their debts to the HMOs because those funds were subject to an equitable lien by the federal government. Accordingly, they asked the court to compel the Secretary to assert its "equitable lien" interest in their section 330 grant funds. The motion for interpleader was denied, however, on the grounds that ". . . plaintiffs' concern of a future claim to the Section 330 funds by the federal defendants, is purely conjectural." *See Rio Grande,* 397 F. 3d at 60.

On March 31, 2004, the United States District Court for the District of Puerto Rico entered a preliminary injunction against the Commonwealth ordering Puerto Rico's Secretary of Health to make wraparound payments to the FQHCs. The Commonwealth complied with that order by both establishing a PPS office and by making wraparound payments to both FQHC Plaintiffs. *See Concillio de Salud Integral de Loiza v. Hon. Rosa Perez Perdomo, Secretary of*

-9-

*Health of the Commonwealth of Puerto Rico,* 479 F. Supp. 2d 247, (D.P.R. 2007).

Despite the Commonwealth's compliance with the order, Plaintiff Loiza asked the court to convert its preliminary injunction into a permanent injunction. *See id.* The court denied Loiza's request. *Id.* In its opinion, the court stated that " . . . the Secretary of Health has always fully complied with this court's orders to make wraparound payments to plaintiffs Loiza and Belaval." *Id.* at 250-51. The court further stated that [t]here is no evidence of record to the effect that, since the creation of the PPS office, the Department of Health has in fact been unable to make a specific wraparound payment because of lack of funds." *Id.*

Although Plaintiffs have made no new allegations to the effect that the Commonwealth is not currently making wraparound payments to them, on June 11, 2007, Plaintiffs filed the instant complaint in this Court alleging that CMS has a duty to take action against or otherwise enforce laws and regulations governing the contracts between the HMOs and the local FQHCs utilized by the Commonwealth for delivery of Medicaid services. Pls.' Compl., ¶47(A).

However, the only direct injury Plaintiffs allege is conjectural. Plaintiffs argue that "but for court orders . . . they *would have* received no 'wraparound payments from the Commonwealth. As such, their Section 330 grants *would bear* the entire cost of their services to Medicaid beneficiaries. Their grants were and are too small to bear that burden. At least Loiza *would have been* out of business by now but for the payments its litigation has yielded." *Id.* at ¶58 (emphasis added). Thus, by their own admission it appears that the litigation pursued in the district court for Puerto Rico solved its problem of enough wraparound payments.[2] Nonetheless,

---

[2] If the Commonwealth has failed to make wraparound payments to these Plaintiffs, an appropriate course of action would be to return to the district court in Puerto Rico to enforce judgment, not to file a new action in this district.

it appears that Plaintiffs are concerned that this problem could recur.  But Plaintiffs have not alleged that the Commonwealth is currently failing to make these payments to the named Plaintiffs.  Indeed, the district court order noted above suggests that they can make no such claim.  In spite of there being no current or actual injury to Plaintiffs, they ask for relief in the form of a court order that would prohibit the Secretary from making payments to the Commonwealth's Medicaid program to ensure wraparound payment continues.  Pls.' Compl, ¶63-70.

## IV. ARGUMENT

Plaintiffs' complaint should be dismissed for several reasons.  First, the complaint fails to identify any statute under which Congress has waived the Secretary's sovereign immunity from suit, and thus this Court lacks the necessary jurisdiction to hear the case.  Second, Plaintiffs lack standing, as they have not been injured; any alleged injury is speculative and not fairly traceable to the actions of the Defendant; additionally, any such injury is not likely to be redressed if the relief sought is granted.  Third, while Plaintiffs ask this Court to force the Secretary to take an enforcement action against the Commonwealth, the decision whether to take an enforcement action against the Commonwealth is committed to agency discretion and is presumptively unreviewable.  In addition, Plaintiffs fail to satisfy the requirements of Fed. R. Civ. P. 23, and therefore any alleged class claims should be dismissed on those grounds as well.

## I.      The Court Lacks Subject Matter Jurisdiction to hear Plaintiffs' Claims, or in the alternative, Plaintiffs Fail to State A Claim.

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must accept as true all material factual allegations in the complaint.  *Scheuer v.*

*Rhodes,* 416 U.S. 232 (1974).  However, "argumentative inferences favorable to the party

asserting jurisdiction should not be drawn."  *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l,*

*Ltd.*, 968 F. 2d 196, 198 (2d Cir. 1992).  The burden of establishing the existence of federal

jurisdiction is on the party seeking to invoke it.  *N.J. Hosp. Ass'n v. United States,* 23 F. Supp. 2d

497, 500 (D.N.J. 1998).  Plaintiffs have not met their burden in this case.

It is well settled that jurisdiction must be established as a threshold requirement before

the Court may address the merits, and absent jurisdiction, the suit must be dismissed.  *Steel Co.*

*v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  Here the Court lacks subject matter

jurisdiction because Congress has not waived sovereign immunity; Plaintiffs lack standing to

bring this suit, and the Secretary's determination as to whether to bring an enforcement action

against the Commonwealth is an action committed to agency discretion by law and not

reviewable.

Furthermore, a motion to dismiss brought pursuant to Rule 12(b)(6) should be granted if

it is beyond doubt that a plaintiff can demonstrate no set of facts that supports his claim entitling

him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Sparrow v. United Air Lines,*

*Inc.*, 216 F.3d 1111, 1117 (D.C. Cir. 2000).  Like a motion to dismiss for lack of subject matter

jurisdiction, although the plaintiff is given the benefit of all inferences that reasonably can be

derived from the facts alleged in the complaint, the court need not accept inferences that are not

supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the form of

factual allegations.  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

A.    **The Sovereign Immunity of the United States Has not Been Waived to Allow This Suit.**

Plaintiffs' complaint should be dismissed because it fails to state any source of law that waives the Secretary's sovereign immunity. "Absent a waiver, sovereign immunity shields the federal government and its agencies from suit." *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Admin. V. Burr*, 309 U.S. 242, 244 (1940). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. *United States v, Navajo Nation*, 537 U.S. 488, 502 (2003) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). The waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Coll Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.* , 527 U.S. 666, 682 (1999) (quoting *United States v. King*, 395 U.S. 1, 4 (1969). Although Plaintiffs purport to bring this suit under the Medicaid provisions of the Social Security Act (42 U.S.C. §§ 1396-1396v) and Section 330 of the Public Health Services Act (42 U.S.C. § 254b), Plaintiffs have not cited a single statute purporting to waive the Secretary's sovereign immunity as to the claims raised in this case. Without such a specific assertion, the matter should be dismissed.

At the crux of Plaintiffs' complaint is a dissatisfaction with the payments they, as FQHCs, fear they may not receive from the Commonwealth of Puerto Rico under the Commonwealth's Medicaid program. Therefore, Plaintiffs ask this Court to require the Secretary to shut off payments to the Commonwealth's Medicaid program to force a change in the state payment system. Specifically, Plaintiffs ask this Court *inter alia* to declare that "HHS' payment of further monies under the Medicaid statute for Medicaid managed care contracts with the

-13-

HMOs in Puerto Rico is unlawful and will remain unlawful until and unless those contracts and

the HMOs or other entities receiving them fully conform to all of the relevant requirements of the

Medicaid statute and regulations" and further "[e]njoing HHS from making any further payments

in support of these HMOs . . .[and] . . . ordering HHS to inform Puerto Rico and all Puerto Rico

Medicaid beneficiaries that those beneficiaries are no longer required to receive their Medicaid

benefits through such HMOs." Pls.' Compl., ¶¶ 63, 64,66. However, in order for the court to

grant Plaintiffs' prayer for relief, this Court must first establish that the United States has waived

its sovereign immunity and that Plaintiffs rely upon a specific statutory waiver allowing this suit.

Yet Plaintiffs have cited no such waiver. Plaintiffs cite no statute under which the Court has

authority to compel the requested action. Indeed, *there is no* statute that permits Plaintiffs to sue

the Secretary to "cease making federal payments" to a state because a party is dissatisfied with

the terms of the subcontracts a state has entered into in administering its state Medicaid program.

   As noted above, Plaintiffs claim that this "action arise[s] under the provisions of Title

XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* . . . and Section 330 of the Public Health

Service Act . . . codified at 42 U.S.C. § 254b." Pls.' Compl. at ¶9, but these statutes provide no

private right of action against the Secretary for the claims raised by the Plaintiffs. Nonetheless,

Plaintiffs claim that the Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331,

1343(a)(3) and (4), 1346 and 1361. Plaintiffs further allege that the declaratory and other relief

sought is authorized under 28 U.S. C. §§ 2201 and 2202 and 42 U.S.C. § 1983. However, while

these authorities may be general jurisdictional footholds, they are not specific waivers of

sovereign immunity allowing this suit, and none of the statutes cited waive the Secretary's

sovereign immunity under the Medicaid statute or PHS Act.[3]

As an initial matter, subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, does not constitute a waiver of sovereign immunity.  Section 1331 creates no substantive rights that may be enforced against the federal government.  *See Navy, Marshall & Gordon, P.C. v. United States Int'l Development-Cooperation Agency*, 557 F.Supp. 484, 488 (D.D.C. 1983); *Hagemeier v. Block*, 806 F.2d 197, 202-03 (8th Cir. 1986); *see also Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1385 (5th Cir. 1989)(stating that although Section 1331 states that district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," " . . . it is well settled that section 1331 implies no general waiver of sovereign immunity, and, therefore, cannot alone be relied upon as the basis of jurisdiction."); *Coggeshall Development Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989) (federal question statute is not a general waiver of sovereign immunity and does not confer jurisdiction).  Thus, Plaintiffs reliance upon § 1331 as a basis for the Court's authority to entertain this suit is misplaced.

Nor may Plaintiffs aassert the requisite waiver of immunity under 42 U.S.C. § 1983, which, by its express terms, applies only to actions of a "person" taken "under color of" state law.  *Id.*  CMS approves Medicaid State plan amendments pursuant to the federal Medicaid statute, and "[i]t is well established that 42 U.S.C. §1983, which provides a cause of action for violations of constitutional rights accomplished under color of state law, does not provide a basis for suit for actions taken under color of federal law." *Meyer v. Reno,* 911 F. Supp 11 (D.D.C.

_____

[3]Plaintiffs do not even allege jurisdiction under the Medicaid statute, but instead assert it pursuant to federal question jurisdiction, 28 U.S.C. § 1331, civil rights jurisdiction under 28 U.S.C. § 1343(a)(3), as defendant jurisdiction, 28 U.S.C. § 1346, and mandamus jurisdiction, 28 U.S.C. § 1361.  *See* Pls.'Compl., ¶ 10.

1996) (citing *Stonecipher v. Bray*, 653 F.2d 398 (9th Cir. 1981), *cert. denied*, 454 U.S.

1145,(1982).  *Maine v. Thiboutot,* 448 1, 24 (1980) (Powell J. Dissenting) (cause of action

against federal government would not be available to private plaintiffs under § 1983 in

connection with cooperative state-federal programs, such as Medicaid).[4]  Plaintiffs reliance on

§ 1983 for a cause of action against the Secretary for failing to enforce the Medicaid statutory

and regulatory criteria governing managed care contracts is again misplaced.[5]

Plaintiffs also incorrectly seek declaratory and injunctive relief pursuant to 28 U.S.C.

§§ 2201 and 2202.  Seeking a declaratory judgment itself does not confer federal jurisdiction

over the action.  *Grauert v. Dulles*, 239 F. 2d 60 (D.C. Cir. 1956).  Indeed, even if the subject

matter of a controversy in which declaratory judgment is sought is seemingly within the

jurisdictional limits of the federal courts, the courts are without the requisite jurisdiction if the

suit is against the government without the government's consent.  *See Balistrieri v. United*

*States,* 303 F. 2d 617 (7th Cir. 1962).  Plaintiffs' claims therefore should be dismissed because

they have failed to invoke a single statute waiving the Federal government's sovereign immunity

from suit and granting jurisdiction over the claims asserted.

**B.     Plaintiffs Lack Standing**

Article III of the U.S. Constitution limits the judicial power of the United States courts to

the resolution of cases and controversies.  *Valley Forge Christian Coll. V. Americans for*

---

[4]*See also Cannon v. Univ. of Chi.,* 441 U.S. 677, 703 n. 33 (1979); *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973).

[5]Apparently Plaintiffs invoke 28 U.S.C. § 1343(a)(3), (4) to support their 42 U.S.C. § 1983 claim because the latter only fashions a remedy, and is not a jurisdictional statute. The Supreme Court has held that the Social Security Act does not fall within the terms of either 28 U.S.C. § 1343(a)(3) or (4).  *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 621 (1979) (court determined the "Social Security Act does not deal with the concept of 'equality' or with the guarantee of 'civil right', as those terms are commonly understood.")

*Separation of Church & State,* 454 U.S. 464 (1982). In considering a motion to dismiss for lack of standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of [the plaintiff]." *Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C. 2005) (internal quotation marks and citations omitted); see also *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). However, because "standing is one of the essential prerequisites to jurisdiction under Article III," *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915 (D.C. Cir. 2003) (citation omitted), the plaintiff bears the burden of establishing proper standing "at the outset of its case." *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 901 (D.C. Cir. 2002). To meet Article III's standing requirements, a party must show "at an irreducible minimum," (1) a direct and palpable injury; (2) that can fairly be traced to the challenged action of the defendant; and (3) is likely to be redressed if the relief sought is granted. *Lujan v. Defenders of Wildlife, et al.* 504 U.S. 555, 560-61. Plaintiffs, however, cannot satisfy any of these elements.

<u>1. Plaintiffs Do Not Suffer From any Direct and Palpable Injury</u>

First, Plaintiffs' current claims of injury are purely conjectural and are therefore not ripe for review. To the extent that Plaintiffs have been harmed in the past, that harm has now been redressed. Plaintiffs' own complaint admits as much. According to Plaintiffs,

> the Puerto Rico Medicaid program has never paid the FQHCs the special rate the Medicaid statute requires and, since 1997, has not paid FQHCs any wraparound during the (now) 10 years that wraparound requirement has been in place (***except for the court-ordered payments to FQHC plaintiffs here in a separate federal lawsuit*** (*Rio Grande Community Health Center, Inc. et al. v. Rosa Perez-Perdomo, Secretary, Department of Health,* case No. 03-1640 (District Court of the District of Puerto Rico) and appeals thereof (*Rio Grande Community Health Center, Inc. v. Rullen,* 397 F. 3d 56 (1st Cir. May 18, 2007)), ***and some token payments in late 2006 or early 2007 to a few other FQHCs to look good to the District Court*** which is presiding over the *Rio Grande* case as well as

> other FQHC cases filed after FQHC plaintiffs' successes in *Rio Grande* and appeals
> thereof . . .

Pls.' Compl. at ¶44(A) (*emphasis added).*  Later in their Complaint, Plaintiffs go on to say that "but for court orders in the above referenced federal litigation these plaintiffs have brought, they *would have* received no 'wraparound' payments from the Commonwealth." *Id.* at ¶58 (*emphasis added).*

In other words, as fully admitted by Plaintiffs, any harm previously done to them has since been redressed-- Plaintiffs have been paid.  Nonetheless, they appear to bring this action to avoid the possibility of any future harm and to protect the rights of unnamed entities and individuals who might potentially be harmed.  Plaintiffs have alleged no current injury in their complaint, and any fear of future harm (i.e. failure to continue paying wraparound) is conjectural.  This was the court's finding in the case referred to in the complaint.  *See Concillio de Salud Integral de Loiza v. Hon. Rosa Perez Perdomo, Secretary of Health of the Commonwealth of Puerto Rico,* 479 F. Supp. 2d 247, (D.P.R. 2007).  In that case, plaintiff health center sued the Secretary of Health of the Commonwealth of Puerto Rico, seeking an order requiring the Commonwealth to provide wraparound payments.  In prior proceedings the court issued a preliminary injunction ordering the Commonwealth to make such payments.  The Commonwealth fully complied with the injunction and paid both Plaintiffs Loiza and Belaval the wraparound payments to which they were entitled.  *Id.* at 250-51.  Despite this fact, plaintiff filed a motion asking the court to convert the preliminary injunction into a permanent injunction.  The Court denied Loiza's request stating that:

> Plaintiff is concerned that there may come a point in time when Loiza . . . is unable to
> receive wraparound payments.  Such speculative fear, in and of itself, is legally

insufficient for the court at this time to continue issuing injunctive relief. . . . More so, insofar as Loiza . . . is concerned, the Secretary of Health has always fully complied with this court's orders to make wraparound payments to plaintiffs Loiza and Belaval.

*Id.*

The Court found that the Commonwealth had not only made wraparound payments to Loiza but to other FQHCs as well, and that "[t]here is no evidence that since the creation of the PPS office, the Department of Health has in fact been unable to make a specific wraparound payment because of lack of funds." *Id.* at 10.[6] Plaintiffs' conjectural fear about future payments or for the potential rights of other unnamed FQHCs is legally insufficient to establish a concrete injury necessary for standing.[7]

---

[6] In essence, the instant complaint raises the same issues and prayer for relief that were already litigated in the earlier *Rio Grande* or *Loiza* cases. In those cases, Plaintiffs argued that the Commonwealth had failed to make wraparound payments to the FQHCs, that the contracts between the FQHCs and the HMOs were illegal, and that the Secretary had violated his statutory and regulatory duties to ensure that the subcontracts complied with the PIP requirements and that the Commonwealth make the wraparound payments to which the FQHCs were entitled. *See* Plaintiffs' Complaint for Interpleader, *Rio Grande Community Health Center, Inc., et al. v. U.S. Dept. Of Health and Human Services*, Case No. 05-1575, Docket No.3 (D. P.R.). In the case now before the Court, Plaintiffs seem to have reshaped their arguments slightly but still argue that the contracts between the FQHCs and the HMOs were illegal, that the Secretary had violated his statutory and regulatory duties to ensure that the subcontracts complied with the PIP requirements, and that the Commonwealth make the wraparound payments to which the FQHCs were entitled. However, the issues all were or should have been previously resolved in the Puerto Rico district court litigation involving the parties now before this Court. Indeed, the earlier decision resolved the dispute as to wraparound payments and did not allow plaintiffs request to force the Secretary to act against the Commonwealth on the subcontracts. *See Loiza* 479 F. Supp. 2d 247 at 250-51.

As such, principles of collateral estoppel (issue preclusion) bar Plaintiffs from relitigating these issues. The doctrine of collateral estoppel (issue preclusion) is "designed to protect litigants from the burden of relitigating an identical issue with the same party or [its] privy and to promote judicial economy by preventing needless litigation." *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 645 (2d Cir. 1998) (internal quotations and citation omitted). Collateral estoppel bars a party from raising a specific factual or legal issue in a second action when:

(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998). Under this standard, Plaintiffs Complaint should be dismissed in its entirety, as the issues raised in the instant matter have already been litigated and decided in previous litigation involving the same parties.

[7] *See Whitmore v.* Arkansas, 495 U.S. 149, 158-59 (1990); *see also Smith v. Wis. Dep't of Agr.*, 23 F.3d 1134, 1142 (7th Cir. 1994) (holding that no justiciable case or controversy exists when plaintiff has yet to suffer loss of permit or associated due process rights); *Doe v. Blum*, 729 F.2d 186, 189-90 (2d Cir. 1984) (rejecting standing for

2. Any Alleged Injury Cannot Be Fairly Traced to the Secretary

Even if Plaintiffs had suffered an actual injury, they still would not have standing to bring

this suit, as the alleged injury suffered is not fairly traceable to the Secretary's actions.  In *Lujan*,

504 U.S. 555, "the Supreme Court emphasized the heightened showing required of a plaintiff

alleging injury from the government's regulation of a third party:

> When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful
> regulation (or lack of regulation) of someone else, much more is needed. In that
> circumstance, causation and redressability ordinarily hinge on the response of the
> regulated (or regulable) third party to the government action or inaction-and perhaps on
> the response of others as well. . . . [I]t becomes the burden of the plaintiff to adduce facts
> showing  that . . . choices [of the independent actors] have been or will be made in such
> manner as to produce causation and permit redressability of injury. Thus, when the
> plaintiff is not himself the object of the government action or inaction he challenges,
> standing is not precluded, but it is ordinarily substantially more difficult to establish.

*Renal Physicians Ass'n v. U. S. HHS*, No. 06-5133, 2007 U.S. Cir. LEXIS 13702 at *15,16 (Ct.

D.C. Cir. June 12, 2007).  (citing *Lujan*, 504 U.S. at 562) (internal quotation marks and citations

omitted).

In this case, Plaintiffs' alleged financial injury is not only speculative but it cannot be

fairly traced to any action of the Secretary.  Plaintiffs are dissatisfied with subcontracts entered

into between those who contract with the Commonwealth of Puerto Rico and certain health care

providers.  The Secretary's broad oversight over a state's administration of its Medicaid program

is not sufficient to confer standing to sue the Secretary on such contracts.  *See e.g. Am. Health*

*Care Ass'n v. Sullivan,* 1991 WL 187456 (D.D.C.) (Plaintiff's speculative injuries are not

---

plaintiffs who failed to allege a denial of "services for want of a Medicaid identification card"); *see also Impress Communications v. Unumprovident Corp.*, 335 F. Supp.2d 1053, 1060 (C.D. Cal. 2003) (holding that "anticipated denial of future benefits" due to improper health plan administration is "purely speculative"); *Loiza*, 479 F. Supp. 2d 247, at 250-51.  If the Commonwealth has violated the court's order, the Secretary submits that the proper remedy would be to return to that court to enforce judgment.

"directly traceable to the Secretary's level of scrutiny over state plans . . .).  It was the Commonwealth's alleged failure to make wraparound payments and Plaintiffs' subcontracts with the HMOs which resulted in alleged financial harm to the Plaintiffs, harm that has already been remedied.  The Secretary did not cause the harm.  Plaintiffs' assertion that the Secretary's failure to provide oversight has allowed them to be harmed and their assertions that such harm might arise again in the future are legally insufficient to confer standing.

### 3. Any Alleged Injury Suffered by Plaintiffs Would Not Likely Be Redressed if the Relief Sought Were Granted

Finally, Plaintiffs also fail to satisfy the third and final prong of the standing test, as the relief they seek (Defendant's withholding of FFP) would not likely redress Plaintiffs' injury. While it is within the Secretary's discretion to withhold FFP, (see *infra* at C. for further discussion of this issue), the Secretary cannot force the HMOs to release Plaintiffs from their contracts, nor cause the Commonwealth to make wraparound payments.  *See Arthur C. Logan Mem'l Hosp.* , 441 F. Supp. 26, 27 (S.D.N.Y. 1977) (Secretary cannot compel state compliance).[8]

Furthermore, an enforcement action against the HMOs for violations of the statutory provisions cited by Plaintiffs, (*see* Pls.' Compl at ¶46), would be inconsistent with the Secretary's own interpretation of such provisions.  The provisions cited by Plaintiffs apply exclusively to physician incentive plans ("PIPs"), which do not include FQHCs. The PIP requirements apply to contracts where physicians or physician groups are at risk for services they do not provide.  42 U.S.C. § 1395mm(i)(8) (made applicable by § 1396b(m)(2)(A)(x)); 42 C.F.R. § § 422.210 (made applicable by § 438.6(h)).  The Secretary has interpreted a PIP to be "any

---

[8]Moreover, FFP payable to the Commonwealth is capped, and historically, the Commonwealth has exceeded that cap. Thus, there is no guarantee that there would be any FFP available to withhold.

compensation arrangement to pay a physician or physician group that may directly or indirectly have the effect of reducing or limiting the services provided to a plan enrollee." 42 C.F.R. § 422.208. The regulation further defines a "physician group" as "a partnership, association, corporation, individual practice association, or other group of physicians that *distributes income from the practice among members."* 42 C.F.R. § 422.208(a) (emphasis added). A FQHC is neither a physician nor are FQHCs "physician groups" as defined under the PIP regulations. FQHCs are either publically run or not-for-profit organizations, and as a result, they are outside the defined scope of "physician groups" since not-for-profits do not "distribute income from the practice among members." *See* 42 C.F.R. 51c.101 (only public and nonprofit private entities are eligible to apply for section 330 grants). The Secretary has consistently interpreted these PIP regulations as inapplicable to a payment arrangement between an HMO and a FQHC. This interpretation is well "within the bounds of reasonable interpretation" and entitled to deference. *See Your Home Visiting Nurses Servs., Inc. v. Shalala*, 525 U.S. 449, 453 (1999). Therefore, the very rules Plaintiffs rely upon to bring the Secretary into this action, and which the Plaintiffs want enforced by the Secretary against the Commonwealth are inapplicable.

Even if, contrary to fact, the PIP requirements applied to subcontracts between the HMOs and FQHCs, and their subcontractors violated these requirements, enforcement of these requirements would not necessarily be of benefit to Plaintiffs. Indeed, if the Secretary were to find that the HMOs violated the PIP requirements in this way, the Secretary could, after affording notice and hearing, disallow FFP for payments made under that HMO's contract with the Commonwealth. 42 U.S.C. § 1396b(m)(5)(A), (B). While this action might coerce the Commonwealth to demand a change in the subcontracts, the statute and regulations do not permit

the Secretary to set aside the subcontracts or require the Commonwealth or the HMO to make restitution to Plaintiffs, as Plaintiffs seek in their complaint. *See* Pls.' Compl., Prayer for Relief; *see also Arthur C. Logan Mem'l Hosp.,* 441 F. Supp. 26, 27 (S.D.N.Y. 1977) (Secretary cannot compel compliance). The Secretary cannot affirmatively compel the HMOs to release Plaintiffs from their subcontracts, nor cause the HMOs and the Commonwealth to make payments to Plaintiffs. The Secretary's authority is limited to specifically enumerated actions, such as withholding FFP for certain classes of nonallowable costs or withholding FFP after the Secretary determines that a state is "substantially" noncompliant with the Medicaid Act. *Arthur C. Logan Mem'l Hosp.,* 441 F. Supp at 27. It is therefore far from clear that reducing FFP to the Commonwealth would necessarily redress any injury suffered by Plaintiffs, a necessary prerequisite to standing.

### C.    The Decision Whether to Take an Enforcement Action Against the Commonwealth Is Committed to Agency Discretion and Is Presumptively Unreviewable.

Plaintiffs suggest that the Secretary's failure to initiate enforcement action against the Commonwealth for failing to make wraparound payments led to Plaintiffs' alleged injuries. Even if this were true, which it is not, an agency has absolute discretion in exercising its enforcement authority, and its decisions are presumptively unreviewable. As the United States Supreme Court explained in *Heckler v. Chaney*, 470 U.S. 821, 831 (1985):

> This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

*Id.* The Court explained that an agency's decision not to enforce involves a "complicated

balancing of a number of factors which are particularly within its expertise," *Id.* at 831-32.

Courts have recognized that this principle applies to the Secretary's decision whether to initiate an enforcement action against a state Medicaid program.  *See Phoenix Baptist Hosp. & Med. Ctr. v. United States,* 973 F.2d 452 (9th Cir. 1991) (Secretary has discretion as to whether to withdraw funding from a state Medicaid program for failure to comply with federal requirements); *Steels by Steele v. Magnant,* 796 F. Supp.  1143 (N.D. Ind. 1992); *Arthur C. Logan Mem'l Hosp.,* 441 F. Supp. at 26 ("it is within the discretion of the Secretary to hold a compliance hearing pursuant to 42 U.S.C. § 1396c").  Moreover, the Secretary must provide the Commonwealth with notice and opportunity to be heard before he may withhold FFP for noncompliance with federal requirements.  42 U.S.C. § 1396c; 42 C.F.R. § § 430.35, 430.42.  Similarly, the decision to commit agency resources to investigating whether the Commonwealth or its HMOs have violated the PIP requirements is with the Secretary's discretion as well.  *Id.*; 42 C.F.R. 430.32 (CMS review of selected aspects of agency operation.)  Therefore, Plaintiffs' request that this Court order the Secretary to take on an enforcement action against Puerto Rico and reduce Medicaid payments to the Commonwealth falls outside the scope of this authority and should be denied.

**II.    PLAINTIFFS' CLASS CLAIMS FAIL TO SATISFY RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

    **A.    Class Action Requirements**

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982)(*quoting Califano v. Yamasaki*, 442 U.S. 682, 700-701, (1979)).  Under

-24-

Fed. R. Civ. P. 23(a), a party seeking class certification must satisfy four threshold criteria:  (1) numerosity (a class "so numerous that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "typical of the claims or defenses of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").  In addition to satisfying Rule 23(a), the party seeking certification must establish that the proposed class action is appropriate under at least one of the requirements of Rule 23(b).  *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

The party seeking certification "bears the burden of demonstrating" that each Rule 23 requirement is met.  *McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n. 9 (D.C. Cir. 1984); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999), *cert. denied*, 529 U.S. 1107 (2000).  Failure to prove even one of these elements requires dismissal of the class complaint.  *Id.*; *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453 (D.D.C. 1985); *Pendleton v. Schlesinger*, 73 F.R.D. 506, 508 (D.D.C. 1977).  Consistent with the exceptional nature of class actions, the Supreme Court has cautioned that class actions may be certified only where a "rigorous analysis has shown that the requirements of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161.  In other words, "actual, not presumed, conformance with Rule 23(a) [is]  .  .  . indispensable." *Id.* at 160 (noting potential unfairness to class members bound by unfavorable judgment); *see also Wagner v. Taylor*, 836 F.2d 578, 594 (D.C. Cir. 1987).  Mere conclusory averments are insufficient to obtain class certification.  *See In re American Medical Systems, Inc.*, 75 F.3d 1069, 1083, 1086 (6th Cir. 1996); *Gonzalez v. Brady*, 136 F.R.D. 329 (D.D.C. 1991).

A class action complaint must allege "facts from which [a] district court could reasonably infer that the mandatory prerequisites of Fed. R. Civ. P. 23(a) [have] been met," *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1033 (6th Cir. 1992), and deficient class allegations may be struck. *Id.*; LCvR 23.1(b) ("A defendant may move at any time to strike the class allegations or to dismiss the complaint."). As the Supreme Court has instructed, "sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ." *Falcon*, 457 U.S. at 147. Moreover, the need to state a factually viable claim at the outset of litigation is particularly pressing in class actions where the mere filing of a class complaint creates fiduciary obligations to members of the putative class, upon which putative class members may rely even though a class has not been certified. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393-94 (1977).

**B.**  **The Named Plaintiffs Have Not Established Commonality Or Typicality**

The commonality and typicality requirements of Rule 23(a) "'tend to merge' because '[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *Caridad*, 191 F.3d at 291 (alteration in original) (quoting *Falcon*, 457 U.S. at 157 n. 13). To satisfy commonality, plaintiffs must make a "specific presentation" identifying a question of law or fact common to their claims and those of the class members they seek to represent. *Falcon,* 457 U.S. at 158. To satisfy typicality, plaintiffs must establish that "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Marisol A.*, 126 F.3d at 372 (internal

-26-

citation omitted).

Plaintiffs' claims fail these requirements for two basic reasons. First, the proposed class bears little resemblance to Plaintiffs. Plaintiffs seek to represent a class composed of "beneficiaries of Puerto Rico's Medicaid program or other individuals not enrolled in Medicaid who are patients of, or wish to be patients of, FQHCs." Pls.' Compl., ¶18. The proposed class is wildly over broad, including all Medicaid beneficiaries residing in Puerto Rico in addition to individuals who are not enrolled in Medicaid and not patients of any FQHC. Pls.' Compl., ¶18 (emphasis added). This proposed class bears little or no relation to Plaintiffs, who are FQHCs and members of one of the two FQHC Plaintiffs' Board of Directors. *Id*. at ¶¶ 12-17.

Second, Plaintiffs' claims may vary significantly from those of potential class members, as the Commonwealth has already paid the FQHC Plaintiffs. Pls.' Compl., ¶¶ 44(A), 58; *see also Loiza,* 479 F. Supp. 2d 247*,* at 250-51. According to Plaintiffs' complaint, however, other FQHCs in Puerto Rico may not as yet have received wraparound payment from the Commonwealth. Pls.' Compl. at ¶ 59. Any potential class members who are patients of these other FQHCs who have not been paid would have significantly different claims and legal arguments than those of Plaintiffs.

Whether or not an FQHC has received and will continue to receive wraparound payment from the Commonwealth is the central question in this litigation. Determining whether a potential class member has been harmed by the Commonwealth's failure to make a wraparound payment to which it is entitled is inherently *fact-specific*, and would depend on the unique facts related to each class member's case. There is thus no "common nucleus of operative facts" sufficient to satisfy the commonality requirement. *Petrolito*, 221 F.R.D. at 309.

Plaintiffs' claim also raises no common question of law.  Plaintiffs' entire basis for certification is their claim that their "interests in and rights under federal law are being impaired by the unlawful actions of Puerto Rico Medicaid program and HHS's failure to carry out mandatory duties regarding such actions . . ." Pls. Compl., ¶21.  But Plaintiffs lack standing to make this argument because they have already been paid by the Commonwealth and are thus not subject to the allegedly unlawful conduct at the heart of the matter.  *See Reese*, 202 F.R.D. at 93 (plaintiff lacks standing to challenge alleged unlawful action to which she was not subjected). *See Reese*,  202 F.R.D. at 93 (plaintiff cannot act as class representative with respect to claim challenging allegedly unlawful conduct to which she was not subjected).  The entire basis upon which plaintiffs seek certification thus has no merit.

### C.     The Named Plaintiffs Are Not Adequate Class Representatives

Plaintiffs are not adequate representatives for many of the same reasons addressed above. *See* Fed. R. Civ. P. 23(a)(4); *Falcon*, 457 U.S. at 157-58 n.13 (noting that the adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality requirements, although the adequacy requirement "also raises concerns about the competency of class counsel and conflicts of interest").

In order to satisfy adequacy of representation, "[a] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (internal citation omitted); *Petrolito*, 221 F.R.D. at 307 (representative plaintiff must be a member of the class she seeks to represent).  As this Circuit has explained, "[b]asic consideration of fairness require[s] that a court undertake a stringent and continuing examination of the adequacy of representation by the named class

representatives at all stages of the litigation where absent members will be bound by the court's judgment." *National Association for Mental Health, Inc. v. Califano*, 717 F.2d 1451, 1457 (D.C. Cir. 1983). In evaluating whether a named plaintiff will fairly and adequately protect the interests of the class members, this Circuit has required that "1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representatives must appear able to vigorously prosecute the interests of the class through qualified counsel." *Id.* at 1458. *See also Wagner*, 836 F.2d at 595-96.

At the outset, Plaintiffs do not satisfy these requirements. Plaintiffs are not "a part of the class" they seek to represent. Plaintiff FQHCs have been paid by the Commonwealth. Neither they nor their patients and Board members have been injured in the way they allege some potential class members may have been injured. In fact, in related proceedings, the district court found that the Commonwealth had not failed to make any wraparound payments since the establishment of the PPS office. *See Loiza*, 479 F. Supp. 2d 247, at 250-51. However, Plaintiffs allege that other FQHCs "have not (yet) obtained wraparound funds in their federal lawsuits . . .[and] [a]t least ten of Puerto Rico's current FQHCs (all Section 330-grantees) are effectively insolvent as a result of the way Puerto Rico's Medicaid program allows HMOs to extract risk contracts and that programs's failure to pay wraparound." Pls.' Compl., ¶¶ 59, 60. While some of the potential class members Plaintiffs seek to represent may be patients of an FQHC that has not been paid in full by the Commonwealth and may have been injured as a result, Plaintiffs are not such individuals and have not been injured in such a way. *See* Pls.' Compl., ¶¶12-17. Plaintiffs are not part of the class they propose and they do not "'possess the same interest and suffer the same injury' as the class members." *Amchem Prods., Inc*. 521 U.S. at 625-26.

-29-

Accordingly, Plaintiffs are in no position to adequately represent the interests of other potential class members.

### D.     The Named Plaintiffs Have Not Met The Requirements of Rule 23(b)(2)

Plaintiffs have failed to plead any facts or make any arguments at all that the proposed class action complies with any of the requirements of 23(b).  For all of the reasons discussed above, Plaintiffs have not established the separate requirement under Rule 23(b)(2) that defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  The named Plaintiffs do not have standing to argue an "across-the-board" challenge to any standard or policy of the Secretary.  *See, e.g., supra* Part IV. 1. B; *see also Falcon*, 457 U.S. at 152, 155-160 (rejecting the "across-the-board" approach and holding that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 . . ." have been met).  By definition, Plaintiffs cannot establish that the Secretary refused to act on grounds generally applicable to the class.

At bottom, this simply is not a case where "'the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *Caridad*, 191 F.3d at 291 (quoting *Falcon*, 457 U.S. at 157 n. 13). The named Plaintiffs cannot even raise the claims they seek to litigate on behalf of the class. Consequently, for all of these reasons, Plaintiffs' class claims should be stricken and the Complaint should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court grant

Defendant's Motion to Dismiss.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610


_____/s/_____
MEGAN ROSE
Assistant United States Attorney
N.C. Bar No. 28639
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-7220 / FAX: (202) 514-8780

_____  TRACEY GLOVER
                                   U.S. Department of Health and Human Services
                                   Office of the General Counsel
                                   Centers for Medicare and Medicaid Services
                                   330 Independence Ave., S.W., Room 5309
                                   Washington, D.C. 20201

OF COUNSEL:

DANIEL MERON
General Counsel

JANICE L. HOFFMAN
Acting Associate General Counsel

MARK D. POLSTON
Deputy Associate General
Counsel for Litigation

United States Department of
Health and Human Services

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONCILLIO DE SALUD INTEGRAL DE LOIZA, INC., ET AL. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.07-01034 (RMC) ) |
| MICHAEL O. LEAVITT, Secretary, United States Department of Health and Human Services, | ) ) ) ) |
| Defendant. | ) ) ) |

## ORDER

This matter, having come before the Court pursuant to Defendant's Motion to Dismiss and to Strike All Class Claims, and based upon the entire record herein, it is this _____ day of _____, 2007 hereby

ORDERED that Plaintiffs' complaint is DISMISSED; and it is further

ORDERED that Defendant's motion to dismiss and to strike is GRANTED; and it is further

ORDERED that judgment shall be entered for Defendant, and that this matter is hereby DISMISSED WITH PREJUDICE.

This is a final, appealable order.

SO ORDERED.

_____
ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE