UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Concilio de Salud Integral de Loiza, Inc.,** *et al*. ) | |
| ) | |
| *Individual Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. 1:07-cv-1034 (RMC) |
| ) | |
| **U.S. Department of Health and Human** ) | |
| **Services,** ) | |
| **and** ) | |
| ) | |
| **Michael Leavitt, Secretary** ) | |
| **U.S. Department of Health and Human** ) | |
| **Services** ) | |
| ) | |
| *Defendants*. ) | |

## NOTICE OF FILING

By coincidence, undersigned counsel just received copies of determinations (herewith being filed) issued by the Commonwealth of Puerto Rico's office (with the Commonwealth's Department of Health) that has been delegated the responsibility for making (or establishing) Medicaid payments to Puerto Rico's Federally-qualified health centers ("FQHCs").[1] These determinations were made for FQHCs other than those undersigned counsel represents. On information and belief, the same determinations have not been made for the FQHCs in this case (or for counsel's other Puerto Rico FQHC clients in other matters).

The significance of the determinations for this case is evident from their content. All of them (which are identical except for dollar amounts on the last page) acknowledge that under the

---

[1] The copies were received, *via* email, yesterday late in the afternoon (close to 5:00 p.m.). They were not reviewed then because counsel and others in his office working on this case were all focused on yesterday's filings and none had the time to review any of their afternoon's or evening's emails.

"agreement between the MCO[2] and ASES [Puerto Rico's agency that contracts with MCOs/HMOs for risk based managed care contracts] and the *service provider agreement* with the MCO (Exhibit XI),[3] the parties in the risk contract assumed the risk for covered services. (Emphasis added.) (Footnote omitted.)

The term "risk contract" referred to in that acknowledgement is described in footnotes 1 and 2. The description confirms our prior contentions (and considerable undisputed evidence therefor) that the FQHCs' contracts with the HMOs turn the FQHCs into mini-HMOs, or insurance companies, because the contracts the FQHCs receive are for an insurance risk, not payment for furnishing FQHC services as contemplated by 42 U.S.C. § 1396b(m)(2)(A)(ix) (the FQHC payment (by HMO) requirement).

Footnote 2 is especially important. According to that footnote's explanation of the risk imposed first on the HMOs by ASES and then on the FQHCs and doctor group IPAs by the HMOs, if "the cost of the services covered under the [risk] contract. . .exceeds the payments under the contract," an HMO or FQHC/IPA in that situation then "incurs [the] loss…" As we explained in the Reply we filed yesterday, at 14-16, under the physician incentive plan ("PIP") protections in the Medicaid statute and implementing HHS regulations, the loss IPAs or others to

---

[2] As explained in prior filings, "MCO" is the acronym for "managed care organization", which, under 42 U.S.C. § 1396b(m), with limited exception, is the only kind of entity that is eligible to receive a risk-based Medicaid managed care contract. As also explained in those filings, all of Puerto Rico's MCO's are HMOs. HMO is one of several categories of the types of entities that qualify as MCOs.

[3] We do not yet have a copy of the referenced exhibit, nor apparently does local counsel. It is clear, however, that the "service provider agreement" being referred to is the HMO-FQHC/IPA contract.

whom/which the PIP protections apply[4] is limited to a maximum of 25 percent of the payments, plus 10 percent of the remainder (in other words, .25 + .10 X .90 = .34, or 34 percent).

The potential loss of the entire payment plus added amounts, the exact potential loss footnote 2 describes is completely accurate for a contract of insurance. An insurance company accepts the risk that its aggregate insurance premiums will be less than its losses. However, such an insurance risk automatically exceeds the PIP protection's limits and automatically violates 42 U.S.C. § 1396b(m)(2)(A)(1)(x)'s mandate that HHS' review and approval of Medicaid HMO/MCO contracts must include a determination of whether that HMO/MCO is being required to meet the PIP "requirements".

Whatever illusion Ms. Kelly and her minions may have been under that Puerto Rico's HMOs followed PIP, or at least were required by the Commonwealth's Medicaid officials to do so, is shattered by footnote 2.

                                                        Respectfully submitted,

Date: December 21, 2007              /s/ James L. Feldesman
                                              James L. Feldesman ( D.C. Bar No. 23796)
                                              jfeldesman@ftlf.com
                                              Kathy S. Ghiladi (D.C. Bar No. 435484)
                                              kghiladi@ftlf.com
                                              Robert A. Graham (D.C. Bar No. 450345)
                                              rgraham@ftlf.com

                                              Feldesman Tucker Leifer Fidell LLP
                                              2001 L Street, N.W., Second Floor
                                              Washington, D.C. 20036
                                              (202) 466-8960 (telephone)
                                              (202) 293-8103 (facsimile)

                                              *Attorneys for Plaintiffs*

---

[4] They apply to providers with which/whom the HMO/MCO contracts, not to HMOs/MCOs that enter into Medicaid risk based managed care contracts with a State.

3

Commonwealth of Puerto Rico
Department of Health
Medical Assistance Program



Estado Libre Asociado de Puerto Rico
Departamento de Salud

November 26, 2007

**Prospective Payment System Office Determination of PPS Rate and Wraparound Payment Calculation for Servicios de Salud Primarios de Barceloneta, Inc. D/B/A Atlantic Medical Center**

This analysis provides the determination of the Preliminary Prospective Payment System Rate (PPS Rate) for Servicios de Salud Primarios de Barceloneta, Inc D/B/A Atlantic Medical Center (the Center). The preliminary PPS rate will then be used to determine the supplemental or wraparound payment (WAP) for the years 2001, 2002, 2003, 2004, 2005, 2006 and 2007.

### Background

The Commonwealth of Puerto Rico (the Commonwealth) adopted in its State Plan under the Social Security Act the Prospective Payment System Methodology (PPS) for Federally Qualified Healthcare Centers (FQHC) and Rural Healthcare Clinics (RHC) in accordance with requirements of Benefit Improvement and Protection Act 2000 (BIPA). Based on the new requirements, the manner Medicaid covered services furnished by FQHC/RHC for fiscal years commencing in January 1, 2001 were to be compensated under a new prospective payment system rate per visit. The State Plan provides for wrap around payments to ascertain BIPA requirements are met.

### Healthcare services

The Commonwealth created the Puerto Rico Healthcare Insurance Administration (ASES) to administer the Puerto Rico Health Reform and enter, among others, into Comprehensive Risk Contracts[1] (Exhibit X) with Managed Care Organizations (MCO). As established in the services agreement between the MCO and ASES and the service provider agreement with the MCO (Exhibit XI), the parties in the risk contract [2] assumed the risk for covered services.

The Health Reform Program covered Medicaid beneficiaries and other non Medicaid eligible participants. In addition, the FQHC provides services to other patients, such as Medicare and other insured patients.

---

[1] Comprehensive risk contract – a risk contract covers comprehensive services, that is, inpatient hospital services and any of the following services, or any three or more of the following services: 1) Outpatient hospital services; 2) Rural health clinic services; 3) FQHC services; 4) Other laboratory and X-ray services; 5) Nursing facility (NF) services; 6) Early and periodic screening, diagnosis, and treatment (EPSDT) services; 7) Family planning services; 8) Physician services; 9) Home health services.
[2] Risk contract – a contract under which the contractor: 1) assume risk for the cost of the services covered under the contract; and 2) incurs loss if the cost of furnishing the services exceeds the payments under the contract.

Commencing in January 2001, for Medicaid Beneficiaries, BIPA and the State Plan provide for WAP, subject to certain limitations, when capitated payments are less than the amount that the FHQC/RCH would have received under PPS.

Non-Medicaid eligible participants in the Reform are not subject to supplemental payments as defined by BIPA and the State Plan as the services are covered under the Comprehensive Risk Contracts.

**Amounts Claimed by the Center for Years 1999 and 2000**

The amounts claimed by the Center for years prior 2001 are not subject to supplemental payments as the Health Reform services provided by the Center were subject to a comprehensive risk contract with the MCO. Upon entering into comprehensive risk contract, the Center agreed with the MCO to provide or arrange for the provision of services to its designated beneficiaries and that the compensation received pursuant to the agreement constituted payment in full for all covered services provided to its designated beneficiaries, which included Medicaid and Non-Medicaid beneficiaries.

**PPS and WAP Calculations for the Years 2001, 2002, 2003, 2004, 2005, 2006 and 2007**

Consistent with BIPA and State Plan, Servicios de Salud Primarios de Barceloneta, Inc. D/B/A Atlantic Medical Center is entitled to WAP for quarters beginning January 1, 2001. (See Exhibit II)

Based on the PPS Base Rate Determination Worksheet (Exhibit I), average cost per visit years 1999 and 2000, and the WAP Calculation for the Years 2001, 2002, 2003, 2004, 2005, 2006 and the six months period ended June 30, 2007 (Exhibit II), no supplemental payments are required for such period since the average revenue per visit exceed the PPS Rate adjusted by the Medicare Economic Index (MEI) for those period, computed based on the methodology established by the Benefit Improvement and Protection Act 2000 (BIPA), adopted by the Commonwealth of Puerto Rico.

**Recovery of Interim WAP Payments**

Before determining the PPS Rate for the years 2001 through 2007, interim supplemental wraparound payments were made for which the reimbursement was sought. The Center received $ 9,506 for the third and forth quarter of 2006 related to WAP. Upon concluding the Center was not entitle to a WAP. The Center needs to reimburse the $9,506 in the next 90 days as required by regulation.

Dra. Wendy Matos
Director
Medical Assistance Program

Commonwealth of Puerto Rico
Department of Health
Medical Assistance Program



Estado Libre Asociado de Puerto Rico
Departamento de Salud

November 26, 2007

### Prospective Payment System Office Determination of PPS Rate and Wraparound Payment Calculation for Centro de Salud Familiar de Arroyo Dr. Julio Palmieri Ferri, Inc.

This analysis provides the determination of the Preliminary Prospective Payment System Rate (PPS Rate) for Centro de Salud Familiar de Arroyo Dr. Julio Palmieri Ferri, Inc. (the Center). The preliminary PPS rate will then be used to determine the supplemental or wraparound payment (WAP) for the years 2001, 2002, 2003, 2004, 2005, 2006 and 2007.

### Background

The Commonwealth of Puerto Rico (the Commonwealth) adopted in its State Plan under the Social Security Act the Prospective Payment System Methodology (PPS) for Federally Qualified Healthcare Centers (FQHC) and Rural Healthcare Clinics (RHC) in accordance with requirements of Benefit Improvement and Protection Act 2000 (BIPA). Based on the new requirements, the manner Medicaid covered services furnished by FQHC/RHC for fiscal years commencing in January 1, 2001 were to be compensated under a new prospective payment system rate per visit. The State Plan provides for wrap around payments to ascertain BIPA requirements are met.

### Healthcare services

The Commonwealth created the Puerto Rico Healthcare Insurance Administration (ASES) to administer the Puerto Rico Health Reform and enter, among others, into Comprehensive Risk Contracts[1] (Exhibit X) with Managed Care Organizations (MCO). As established in the services agreement between the MCO and ASES and the service provider agreement with the MCO (Exhibit XI), the parties in the risk contract [2] assumed the risk for covered services.

The Health Reform Program covered Medicaid beneficiaries and other non Medicaid eligible participants. In addition, the FQHC provides services to other patients, such as Medicare and other insured patients.

---

[1] Comprehensive risk contract – a risk contract covers comprehensive services, that is, inpatient hospital services and any of the following services, or any three or more of the following services: 1) Outpatient hospital services; 2) Rural health clinic services; 3) FQHC services; 4) Other laboratory and X-ray services; 5) Nursing facility (NF) services; 6) Early and periodic screening, diagnosis, and treatment (EPSDT) services; 7) Family planning services; 8) Physician services; 9) Home health services.
[2] Risk contract – a contract under which the contractor: 1) assume risk for the cost of the services covered under the contract; and 2) incurs loss if the cost of furnishing the services exceeds the payments under the contract.

Commencing in January 2001, for Medicaid Beneficiaries, BIPA and the State Plan provide for WAP, subject to certain limitations, when capitated payments are less than the amount that the FHQC/RCH would have received under PPS.

Non-Medicaid eligible participants in the Reform are not subject to supplemental payments as defined by BIPA and the State Plan as the services are covered under the Comprehensive Risk Contracts.

### Amounts Claimed by the Center for Years 1999 and 2000

The amounts claimed by the Center for years prior 2001 are not subject to supplemental payments as the Health Reform services provided by the Center were subject to a comprehensive risk contract with the MCO. Upon entering into comprehensive risk contract, the Center agreed with the MCO to provide or arrange for the provision of services to its designated beneficiaries and that the compensation received pursuant to the agreement constituted payment in full for all covered services provided to its designated beneficiaries, which included Medicaid and Non-Medicaid beneficiaries.

### PPS and WAP Calculations for the Years 2001, 2002, 2003, 2004, 2005, 2006 and 2007

Consistent with BIPA and State Plan, Centro de Salud Familiar de Arroyo Dr. Julio Palmieri Ferri, Inc. is entitled to WAP for quarters beginning January 1, 2001. (See Exhibit II)

Based on the PPS Base Rate Determination Worksheet (Exhibit I), average cost per visit years 1999 and 2000, and the WAP Calculation for the Years 2001, 2002, 2003, 2004, 2005, 2006 and the six months period ended June 30, 2007 (Exhibit II), no supplemental payments are required for such period since the average revenue per visit exceed the PPS Rate adjusted by the Medicare Economic Index (MEI) for those period, computed based on the methodology established by the Benefit Improvement and Protection Act 2000 (BIPA), adopted by the Commonwealth of Puerto Rico.

### Recovery of Interim WAP Payments

Before determining the PPS Rate for the years 2001 through 2007, interim supplemental wraparound payments were made for which the reimbursement was sought. The Center received $8,914 for the third and forth quarter of 2006 related to WAP. Upon concluding the Center was not entitle to a WAP. The Center needs to reimburse the $8,914 in the next 90 days as required by regulation.

Dra. Wendy Matos
Director
Medical Assistance Program

Commonwealth of Puerto Rico
Department of Health
Medical Assistance Program



Estado Libre Asociado de Puerto Rico
Departamento de Salud

November 26, 2007

**Prospective Payment System Office Determination of PPS Rate and Wraparound Payment Calculation for Corporación de Servicos Médicos Primarios y Prevención de Hatillo, Inc.**

This analysis provides the determination of the Preliminary Prospective Payment System Rate (PPS Rate) for Corporación de Servicos Médicos Primarios y Prevención de Hatillo, Inc. (the Center). The preliminary PPS rate will then be used to determine the supplemental or wraparound payment (WAP) for the years 2001, 2002, 2003, 2004, 2005, 2006 and 2007.

**Background**

The Commonwealth of Puerto Rico (the Commonwealth) adopted in its State Plan under the Social Security Act the Prospective Payment System Methodology (PPS) for Federally Qualified Healthcare Centers (FQHC) and Rural Healthcare Clinics (RHC) in accordance with requirements of Benefit Improvement and Protection Act 2000 (BIPA). Based on the new requirements, the manner Medicaid covered services furnished by FQHC/RHC for fiscal years commencing in January 1, 2001 were to be compensated under a new prospective payment system rate per visit. The State Plan provides for wrap around payments to ascertain BIPA requirements are met.

**Healthcare services**

The Commonwealth created the Puerto Rico Healthcare Insurance Administration (ASES) to administer the Puerto Rico Health Reform and enter, among others, into Comprehensive Risk Contracts[1] (Exhibit X) with Managed Care Organizations (MCO). As established in the services agreement between the MCO and ASES and the service provider agreement with the MCO (Exhibit XI), the parties in the risk contract [2] assumed the risk for covered services.

The Health Reform Program covered Medicaid beneficiaries and other non Medicaid eligible participants. In addition, the FQHC provides services to other patients, such as Medicare and other insured patients.

---

[1] Comprehensive risk contract – a risk contract covers comprehensive services, that is, inpatient hospital services and any of the following services, or any three or more of the following services: 1) Outpatient hospital services; 2) Rural health clinic services; 3) FQHC services; 4) Other laboratory and X-ray services; 5) Nursing facility (NF) services; 6) Early and periodic screening, diagnosis, and treatment (EPSDT) services; 7) Family planning services; 8) Physician services; 9) Home health services.
[2] Risk contract – a contract under which the contractor: 1) assume risk for the cost of the services covered under the contract; and 2) incurs loss if the cost of furnishing the services exceeds the payments under the contract.

Commencing in January 2001, for Medicaid Beneficiaries, BIPA and the State Plan provide for WAP, subject to certain limitations, when capitated payments are less than the amount that the FHQC/RCH would have received under PPS.

Non-Medicaid eligible participants in the Reform are not subject to supplemental payments as defined by BIPA and the State Plan as the services are covered under the Comprehensive Risk Contracts.

### Amounts Claimed by the Center for Years 1998, 1999 and 2000

The amounts claimed by the Center for years prior 2001 are not subject to supplemental payments as the Health Reform services provided by the Center were subject to a comprehensive risk contract with the MCO. Upon entering into comprehensive risk contract, the Center agreed with the MCO to provide or arrange for the provision of services to its designated beneficiaries and that the compensation received pursuant to the agreement constituted payment in full for all covered services provided to its designated beneficiaries, which included Medicaid and Non-Medicaid beneficiaries.

### PPS and WAP Calculations for the Years 2001, 2002, 2003, 2004, 2005, 2006 and 2007

Consistent with BIPA and State Plan, Corporación de Servicos Médicos Primarios y Prevención de Hatillo, Inc., is entitled to WAP for quarters beginning January 1, 2001. (See Exhibit II)

Based on the PPS Base Rate Determination Worksheet (Exhibit I), average cost per visit years 1999 and 2000, and the WAP Calculation for the Years 2001, 2002, 2003, 2004, 2005, 2006 and the six months period ended June 30, 2007 (Exhibit II), no supplemental payments are required for such period since the average revenue per visit exceed the PPS Rate adjusted by the Medicare Economic Index (MEI) for those period, computed based on the methodology established by the Benefit Improvement and Protection Act 2000 (BIPA), adopted by the Commonwealth of Puerto Rico.

Dra. Wendy Matos
Director
Medical Assistance Program



**Commonwealth of Puerto Rico**
**Department of Health**
**Medical Assistance Program**

Estado Libre Asociado de Puerto Rico
Departamento de Salud

November 26, 2007

### Prospective Payment System Office Determination of PPS Rate and Wraparound Payment Calculation for Hospital Castañer Inc.

This analysis provides the determination of the Preliminary Prospective Payment System Rate (PPS Rate) for Hospital Castañer Inc. (the Center). The preliminary PPS rate will then be used to determine the supplemental or wraparound payment (WAP) for the years 2001, 2002, 2003, 2004, 2005, 2006 and 2007.

### Background

The Commonwealth of Puerto Rico (the Commonwealth) adopted in its State Plan under the Social Security Act the Prospective Payment System Methodology (PPS) for Federally Qualified Healthcare Centers (FQHC) and Rural Healthcare Clinics (RHC) in accordance with requirements of Benefit Improvement and Protection Act 2000 (BIPA). Based on the new requirements, the manner Medicaid covered services furnished by FQHC/RHC for fiscal years commencing in January 1, 2001 were to be compensated under a new prospective payment system rate per visit. The State Plan provides for wrap around payments to ascertain BIPA requirements are met.

### Healthcare services

The Commonwealth created the Puerto Rico Healthcare Insurance Administration (ASES) to administer the Puerto Rico Health Reform and enter, among others, into Comprehensive Risk Contracts[1] (Exhibit X) with Managed Care Organizations (MCO). As established in the services agreement between the MCO and ASES and the service provider agreement with the MCO (Exhibit XI), the parties in the risk contract [2] assumed the risk for covered services.

The Health Reform Program covered Medicaid beneficiaries and other non Medicaid eligible participants. In addition, the FQHC provides services to other patients, such as Medicare and other insured patients.

---

[1] Comprehensive risk contract – a risk contract covers comprehensive services, that is, inpatient hospital services and any of the following services, or any three or more of the following services: 1) Outpatient hospital services; 2) Rural health clinic services; 3) FQHC services; 4) Other laboratory and X-ray services; 5) Nursing facility (NF) services; 6) Early and periodic screening, diagnosis, and treatment (EPSDT) services; 7) Family planning services; 8) Physician services; 9) Home health services.

[2] Risk contract – a contract under which the contractor: 1) assume risk for the cost of the services covered under the contract; and 2) incurs loss if the cost of furnishing the services exceeds the payments under the contract.

Commencing in January 2001, for Medicaid Beneficiaries, BIPA and the State Plan provide for WAP, subject to certain limitations, when capitated payments are less than the amount that the FHQC/RCH would have received under PPS.

Non-Medicaid eligible participants in the Reform are not subject to supplemental payments as defined by BIPA and the State Plan as the services are covered under the Comprehensive Risk Contracts.

### Amounts Claimed by the Center for Year 2000

The amounts claimed by the Center for years prior 2001 are not subject to supplemental payments as the Health Reform services provided by the Center were subject to a comprehensive risk contract with the MCO. Upon entering into comprehensive risk contract, the Center agreed with the MCO to provide or arrange for the provision of services to its designated beneficiaries and that the compensation received pursuant to the agreement constituted payment in full for all covered services provided to its designated beneficiaries, which included Medicaid and Non-Medicaid beneficiaries.

### PPS and WAP Calculations for the Years 2001, 2002, 2003, 2004, 2005, 2006 and 2007

Consistent with BIPA and State Plan, Hospital General de Castañer, Inc. is entitled to WAP for quarters beginning January 1, 2001. (See Exhibit II)

Based on the PPS Base Rate Determination Worksheet (Exhibit I), average cost per visit years 1999 and 2000, and the WAP Calculation for the Years 2001, 2002, 2003, 2004, 2005, 2006 and the six months period ended June 30, 2007 (Exhibit II), no supplemental payments are required for such period since the average revenue per visit exceed the PPS Rate adjusted by the Medicare Economic Index (MEI) for those period, computed based on the methodology established by the Benefit Improvement and Protection Act 2000 (BIPA), adopted by the Commonwealth of Puerto Rico.

### Recovery of Interim WAP Payments

Before determining the PPS Rate for the years 2001 through 2007, interim supplemental wraparound payments were made for which the reimbursement was sought. The Center received $136,356 for the third and forth quarter of 2006 related to WAP. Upon concluding the Center was not entitle to a WAP. The Center needs to reimburse the $136,356 in the next 90 days as required by regulation.

Dra. Wendy Matos
Director
Medical Assistance Program